AP-77,022
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/10/2015 1:37:30 AM
Accepted 2/24/2015 9:52:53 AM
ABEL ACOSTA
CLERK

**No. AP-77,022**

## IN THE
## COURT OF CRIMINAL APPEALS
## OF TEXAS

**WILLIE ROY JENKINS,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

On direct appeal from the 274th Judicial District Court
Cause No. 10-1063, Hays County, Texas
Honorable Gary L. Steele

## BRIEF OF APPELLEE
## DEATH PENALTY CASE

**WES MAU**
Hays County District Attorney
SBOT 00784539
712 S. Stagecoach Trail, Ste. 2057
San Marcos, TX 78666
(512) 393-7600
(512) 393-7619 fax
wes.mau@co.hays.tx.us

**KATHERINE D. HAYES**
Assistant Attorney General
*Lead Counsel*
SBOT 00796729
Texas Office of the Attorney General
Criminal Appeals Division
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1400
(512) 320-8132 fax
katherine.hayes@texasattorneygeneral.gov

The States does not request oral argument.

## IDENTIFICATION OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), the following is a list of all parties to the trial court's judgment and all counsel of record:

Victim:
**Sheryl Ann Norris**

Appellant/Criminal Defendant:
**Willie Roy Jenkins**, TDCJ #999581, Allan B. Polunsky Unit, 3872 FM 350 South, Livingston, TX 77351

Counsel for Appellant on appeal:
**Angela J. Moore**, 310 S. St. Mary's, Ste. 1830, San Antonio, TX 78205; and **Kerri Anderson Donica**, 301 West 3rd Ave., Corsicana, TX 75110

Counsel for Appellant at trial:
**Norman Lanford**, P.O. Box 1136, Cameron, TX 67520; and **John R. Duer**, P.O. Box 920, Georgetown, TX 78627-0920

Counsel for the State of Texas on appeal:
**Katherine D. Hayes**, Assistant Attorney General, *Lead Counsel*, Texas Office of the Attorney General, Criminal Appeals Division, P.O. Box 12548, Austin, TX 78711-2548; and **Wes Mau**, Hays County District Attorney, 712 S. Stagecoach Trail, Ste. 2057, San Marcos, TX 78666

Counsel for the State of Texas at trial:
**Lisa M. Tanner**, Assistant Attorney General, Texas Office of the Attorney General, Criminal Prosecutions Division, P.O. Box 12548, Austin, TX 78711-2548; and **Sherri K. Tibbe**, Hays County District Attorney (now retired)

Trial Judge:
Honorable **GARY L. STEEL**, Judge presiding

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    STATE'S REPLY TO POINT OF ERROR 1 (SUFFICIENCY OF THE
    EVIDENCE) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    STATE'S REPLY TO POINT OF ERROR 2 (ADMISSION OF DNA
    EVIDENCE) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    STATE'S REPLY TO POINT OF ERROR 3 (ADMISSIBILITY OF
    EVIDENCE OF WILLINGNESS TO PLEA) . . . . . . . . . . . . . . . . . . . . 25

    STATE'S REPLY TO POINT OF ERROR 4 (FAILURE TO GRANT
    A MISTRIAL) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    STATE'S REPLY TO POINT OF ERROR 5 (CUMULATIVE
    ERROR) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

STATE'S REPLY TO POINT OF ERROR 6 ("10-12" RULE AND NO INSTRUCTION ON EFFECT OF HOLD-OUT JUROR) ........ 31

STATE'S REPLY TO POINT OF ERROR 7 (NO INSTRUCTIONS ON VICTIM IMPACT EVIDENCE) .............................. 37

STATE'S REPLY TO POINTS OF ERROR 8-11 (NO INSTRUCTION DEFINING TERMS) ........................................ 40

STATE'S REPLY TO POINT OF ERROR 12 (NO INSTRUCTION LIMITING SCOPE OF MILITATING EVIDENCE) ................ 43

STATE'S REPLY TO POINT OF ERROR 13 (NO INSTRUCTION THAT FINDING OF GUILT DOES NOT FORECLOSE CONSIDERATION OF MITIGATING EVIDENCE) ................ 45

STATE'S REPLY TO POINT OF ERROR 14 (NO PRESUMPTION IN FAVOR OF DEATH AND NO REQUIREMENT TO CONSIDER MITIGATION INDEPENDENTLY) ............................. 48

STATE'S REPLY TO POINT OF ERROR 15 (NO VEHICLE FOR JURY TO RETURN A VERDICT OF LIFE IMPRISONMENT) ....... 50

STATE'S REPLY TO POINT OF ERROR 16 (FAILURE TO QUASH INDICTMENT - *APPRENDI v. NEW JERSEY*) ..................... 53

STATE'S REPLY TO POINT OF ERROR 17 (FAILURE TO PRECLUDE THE DEATH PENALTY - *BUSH v. GORE*) ............ 58

STATE'S REPLY TO POINT OF ERROR 18 (INSTRUCTIONS FAILED TO PROVIDE AN OPPORTUNITY FOR A "REASONED MORAL RESPONSE") ......................................... 59

STATE'S REPLY TO POINT OF ERROR 19 (INSTRUCTIONS FAILED TO PROVIDE JURORS A "REASONED AND RATIONAL MORAL RESPONSE") ......................................... 63

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

# INDEX OF AUTHORITIES

**Cases**          **Page**

*Alameda v. State,*
235 S.W.3d 218 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Almanza v. State,*
686 S.W.2d 157 (Tex. Crim. App. 1985) . . . . . . . . . . . . . . . . . . . . . . *passim*

*Apprendi v. New Jersey,*
530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Barrow v. State,*
207 S.W.3d 377 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Brooks v. State,*
323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Burley v. Cabana,*
818 F.2d 414 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Busby v. State,*
253 S.W.3d 661 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . . 26, 34, 56

*Bush v. Gore,*
531 U.S. 98 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x, 15, 58, 59

*Caldwell v Mississippi,*
472 U.S. 320 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Camacho v. State,*
864 S.W.2d 524 (Tex. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Cannon v. State,*
691 S.W.2d 664 (Tex. Crim. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cantu v. State,*
    842 S.W.2d 667 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . . 25, 58

*Castillo v. State,*
    739 S.W.2d 280 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . 54

*Cathey v. State,*
    992 S.W.2d 460 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . 37

*Chamberlain v. State,*
    998 S.W.2d 230 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . 31

*Charles v. State,*
    146 S.W.3d 204 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . 28

*Clewis v. State,*
    922 S.W.2d 126 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . 19, 20

*Coble v. State,*
    330 S.W.3d 253 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . 42

*Colburn v. State,*
    966 S.W. 2d 511 (Tex Crim. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . 47

*Crutsinger v. State,*
    206 S.W.3d 607 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . 59

*Davis v. State,*
    782 S.W.2d 211 (Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . 33

*Draughon v. State,*
    831 S.W.2d 331 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . 35

*Druery v. State,*
    225 S.W.3d 491 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . 36

*Escamilla v. State,*
143 S.W.3d 814 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . 35, 47

*Estrada v. State,*
313 S.W.3d 274 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . 35

*Feldman v. State,*
71 S.W.3d 738 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . 42

*Gamboa v. State,*
296 S.W.3d 574 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . 31, 49

*Gardner v. State,*
306 S.W.3d 274 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . 42, 44

*Gonzales v. State,*
353 S.W. 3d 826 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . 36

*Granviel v. State,*
552 S.W.2d 107 (Tex. Crim. App. 1976) . . . . . . . . . . . . . . . . . . . . . . 20

*Gregg v. Georgia,*
428 U.S. 153 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Guevara v. State,*
152 S.W.3d 45 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . 17

*Hankins v. State,*
132 S.W.3d 387 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . 59

*Hathorn v. State,*
848 S.W.2d 101 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . . 35

*Havard v. State,*
800 S.W.2d 195 (Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . . . . . . 20

*Hayes v. State,*
   982 S.W.2d 419 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Hooper v. State,*
   214 S.W.3d 9 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . 17

*Hughes v. State,*
   24 S.W.3d 883 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . 27

*Hutch v. State,*
   922 S.W.2d 166 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . 15, 62

*Jackson v. Virginia,*
   443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Jenkins v. United States,*
   380 U.S. 445 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Johnson v. Texas,*
   509 U.S. 350 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Jurek v. Texas,*
   428 U.S. 262 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Kelly v. State,*
   824 S.W.2d 568 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . 22

*Ladd v. State,*
   3 S.W.3d 547 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . 42

*Lagrone v. State,*
   942 S.W.2d 602 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . 33

*Lawton v. State,*
   913 S.W.2d 542 (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . . . . . 33, 34

*Leza v. State,*
   351 S.W.3d 344 (Tex. Crim. Ap. 2011) ...................... 39, 42, 56

*Lockhart v. McCree,*
   476 U.S. 162 (1986) ........................... 34

*Luna v. State,*
   268 S.W.3d 594 (Tex. Crim. App. 2008) .......................... 44

*Martinez v. State,*
   924 S.W.2d 693 (Tex. Crim. App. 1996) .......................... 50

*Martinez v. State,*
   327 S.W.3d 727 (Tex. Crim. App. 2010) .......................... 20

*Mays v. State,*
   318 S.W.3d 368 (Tex. Crim. App. 2010) ..................... 39, 52, 56

*McCarthy v. State,*
   65 S.W.3d 47 (Tex. Crim. App. 2001) .......................... 26

*McFarland v. State,*
   928 S.W.2d 482 (Tex. Crim. App. 1996) .......................... 47

*Mills v. Maryland,*
   486 U.S. 367 (1988) ............................. 33, 34

*Montgomery v. State,*
   810 S.W.2d 372 (Tex. Crim. App. 1991) ...................... 22, 25

*Neal v. State,*
   256 S.W.3d 264 (Tex. Crim. App. 2008) .......................... 59

*Ocon v. State,*
   284 S.W.3d 880 (Tex. Crim. App. 2009) ......................... 28, 30

*Perry v. State,*
     158 S.W.3d 438 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . 37, 56

*Prystash v. State,*
     3 S.W.3d 522 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . 33, 34, 35

*Rayford v. State,*
     125 S.W.3d 521 (Tex. Crim. App. 2003) . . . . . . . . . . . . . . . . . . . . . . 54, 59

*Richardson v. State,*
     879 S.W.2d 874 (Tex. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . 15, 62

*Roberts v. State,*
     220 S.W.3d 521 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . 56, 59

*Russeau v. State,*
     171 S.W.3d 871 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . 34, 54

*Russeau v. State,*
     291 S.W.3d 426 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . *passim*

*Saldano v. State,*
     232 S.W.3d 77 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . 39, 49, 52

*Scheanette v. State,*
     144 S.W.3d 503 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 45

*Sharp v. State,*
     707 S.W.2d 611 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 55

*Simmons v. South Carolina,*
     512 U.S. 154 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Smith v. Texas,*
     543 U.S. 37 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Threadgill v. State,*
146 S.W.3d 654 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . 34, 35, 58, 59

*Wardrip v. State,*
56 S.W.3d 588 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Wead v. State,*
129 S.W.3d 126 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 28

*Webb v. State,*
232 S.W.3d 109 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 27

*Whitaker v. State,*
286 S.W.3d 355 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 56

*Williams v. State,*
937 S.W.2d 479 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 47

*Williams v. State,*
301 S.W.3d 675 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . 34, 36

*Woods v. State,*
152 S.W.3d 105 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 54

*Wooten v. State,*
400 S.W.3d 601 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 38

## Constitutions, Statutes, and Rules

Tex. Const. art. I, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Tex. Const. art. I, § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Tex. Const. art. I, § 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Tex. Code Crim. Proc. art. 36.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

Tex. Code Crim. Proc. art. 37.071, § 2(d)(1) .................... 49

Tex. Code Crim, Proc. art. 37.0711, § 2(b)(1) .................... 43

Tex. Code Crim, Proc. art. 37.0711, § 2(b)(2) .................... 43

Tex. Code Crim. Proc. art. 37.0711, § 3(b)(1) .................... 2, 19

Tex. Code Crim. Proc. art. 37.0711, § 3(b)(2) .................... 2

Tex. Code Crim. Proc. art. 37.0711, § 3(d)(1) .................... 32

Tex. Code Crim. Proc. art. 37.0711, § 3(d)(2) .................... 32

Tex. Code Crim. Proc. art. 37.0711, § 3(e) .................... 2, 46, 49

Tex. Code Crim. Proc. art. 37.0711, § 3(f)(1) .................... 32

Tex. Code Crim. Proc. art. 37.0711, § 3(f)(2) .................... 32

Tex. Code Crim. Proc. art. 37.0711, § 3(i) .................... 33

Tex. Code Crim. Proc. art. 37.0711, § 3(j) .................... 2

Tex. Code Crim. Proc. art. 44.2511(b) .................... 16

Tex. Penal Code § 12.31(a) .................... 53

Tex. Penal Code § 19.02(b)(1) .................... 17

Tex. Penal Code § 19.02(b)(2) .................... 17

Tex. Penal Code § 19.03(a) .................... 17

Tex. Penal Code § 19.03(b) .................... 17, 53

Tex. R. App. P. 9.4(e) .................... 66

Tex. R. App. P. 9.4(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Tex. R. App. P. 9.4(i)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Tex. R. App. P. 33.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Tex. R. App. P. 33.1(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Tex. R. App. P. 38.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Tex. R. App. P. 38.1(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Tex. R. App. P. 38.1(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Tex. R. App. P. 38.1(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Tex. R. App. P. 38.1(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 60

Tex. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

FILED IN
COURT OF CRIMINAL APPEALS

March 3, 2015

ABEL ACOSTA, CLERK

No. AP-77,022

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

WILLIE ROY JENKINS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

On direct appeal from the 274th Judicial District Court
Cause No. 10-1063, Hays County, Texas
Honorable Gary L. Steele

BRIEF OF APPELLEE
DEATH PENALTY CASE

To the Honorable Justices of the Court of Criminal Appeals:

STATEMENT OF THE CASE

On May 31, 2013, a Hays County jury convicted Appellant of the capital offense of murdering Sheryl Ann Norris. (2 CR 327; 40 RR 46).[1] The indictment

---

[1] "CR" is the Clerk's Record; "RR" is the Reporter's Record of transcribed testimony and exhibits. Citations are preceded by volume number and followed by page or exhibit number (with "SX" or "DX" for the State's, or Defendant's, exhibits).

alleged that on or about November 24, 1975, Appellant intentionally caused Norris's death by strangling her (paragraph 1) or drowning her (paragraph 2) during the course of his committing or attempting to commit the offense of aggravated rape. (1 CR 4). A separate sentencing hearing was conducted pursuant to Tex. Code Crim. Proc. art. 31.0711, §§ 3(b)(1)-(2) and 3(e). The jury answered "yes" to the special issues on deliberateness and future dangerousness, and answered "no" to the special issue on mitigation. (2 CR 336-39; 48 RR 110-11). On June 13, 2013, Appellant was sentenced to death by lethal injection. (2 CR 342-45). Appellant filed a motion for new trial which was overruled by operation of law. (2 CR 347-48). Direct appeal to this Court is automatic. Tex. Code Crim. Proc. art. 37.011, § 3(j).

## STATEMENT REGARDING ORAL ARGUMENT

The State does not believe the decisional process would be significantly aided by oral argument. The dispositive issues have been authoritatively decided, and the facts and legal arguments are adequately presented in the briefs and record. Appellant has waived oral argument (Appellant's Brief ["Br."] at cover), and the State will do the same.

## ISSUES PRESENTED

**POINT OF ERROR 1**: The death sentence must be reformed to life imprisonment because the evidence is legally insufficient to establish that Appellant deliberately caused the death of Sheryl Ann Norris.

**POINT OF ERROR 2**: The trial court erred in failing to suppress any and all DNA evidence and testimony due to the failure of the testing to meet quality assurance standards.

**POINT OF ERROR 3**: The trial court erred in not allowing evidence of Appellant's willingness to enter a plea to aggravated sexual assault because this was evidence relevant to the mitigation evidence, special issue [number three].

**POINT OF ERROR 4**: The trial court erred in failing to grant a mistrial after jury misconduct was brought to the trial court's attention.

**POINT OF ERROR 5**: The cumulative impact of the above errors was so great that reversal is required.

**POINT OF ERROR 6**: The trial court violated the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution by failing to instruct the jury that a vote by one of them would result in a life sentence despite the statutory requirement of ten votes for a "No" answer to the question of future dangerousness, or for a "Yes" vote for finding a mitigating circumstance.

**POINT OF ERROR 7**: The trial court violated the Eighth and Fourteenth Amendments of the United States Constitution by failing to instruct the jury (a) that its consideration of victim impact evidence should not be conducted in connection with the future-dangerousness special issue; (b) that its consideration of victim impact evidence did not relieve the State of its burden to prove the "future dangerousness" issue beyond a reasonable doubt; (c) to disregard victim impact evidence that was not shown to be within the knowledge or reasonable expectation of the defendant; and (d) to not make a comparative worth analysis of the value of the victims to their families and the community compared to the defendant or other members of society.

**POINT OF ERROR 8**: The trial court violated the Eighth and Fourteenth Amendments when it failed to define the word "probability" for the jury during the sentencing phase.

**POINT OF ERROR 9**: The trial court violated the Eighth and Fourteenth Amendments when it failed to define the phrase "criminal acts of violence" for the jury during the sentencing phase.

**POINT OF ERROR 10**: The trial court violated the First, Eighth, and Fourteenth Amendments of the United States Constitution by failing to define the word "militates" so as to preclude consideration of the defendant's age, race, sex, national origin, religion, political views or sexual orientation as a factor supporting a death sentence.

**POINT OF ERROR 11**: The trial court violated the Eighth and Fourteenth Amendments when it failed to define the phrase "continuing threat to society" for the jury during the sentencing phase.

**POINT OF ERROR 12**: The trial court violated the Eighth and Fourteenth Amendments of the United States Constitution by failing to instruct the jury so as to limit the scope of militating evidence to that which a juror might regard as increasing the defendant's moral blameworthiness.

**POINT OF ERROR 13**: The trial court violated the Eighth and Fourteenth Amendments of the United States Constitution by failing to instruct the jury that their finding of guilt in the first phase of the trial did not foreclose consideration of evidence which they believed tended to reduce the moral blameworthiness of the defendant.

**POINT OF ERROR 14**: The trial court violated the Eighth Amendment by failing to instruct the jury that there is no presumption in favor of death even if they found [Appellant] to be a "future danger" in answer to special issue number two, and that special issue number three, regarding mitigating circumstances, is to be taken up and considered independently without regard to the jury's finding on number two.

**POINT OF ERROR 15**: The trial court violated the Eighth Amendment when it failed to instruct the jury so as to provide a vehicle for a juror to return a life verdict where the juror concludes that the aggravating

factors, although established by the evidence, still are not so severe as to call for death as a punishment.

**POINT OF ERROR 16**: The trial court erred when it refused to quash the indictment because a grand jury had not considered and alleged in an indictment the facts legally essential to [Appellant's] conviction and death sentence.

**POINT OF ERROR 17**: The trial court erred in denying a defense motion to preclude the death penalty as a sentencing option due to Equal Protection violations.

**POINT OF ERROR 18**: The trial court violated [Appellant's] rights under the Eighth Amendment of the United States Constitution in that the sentencing phase instructions failed to provide the jury the opportunity to have its decision reflect a "reasoned moral response" to the offender and his offense.

**POINT OF ERROR 19**: The trial court violated the Eighth and Fourteenth Amendments when it failed to instruct the jury so as to provide a reasoned and rational moral process for the consideration and implementation of mitigating circumstances.

(Appellant's Br. 47-124).

## STATEMENT OF FACTS[2]

In August of 1975, Wayne Andrus moved from Florida to San Marcos, Texas, to attend school at Southwest Texas University. (37 RR 133). Wayne rented unit #602 at the Ye Olde Colony Apartments at the corner of Aquarena Springs and Interstate-

---

[2] This Statement of Facts focuses on the evidence at trial. Appellant does not challenge the sufficiency of the evidence supporting the future dangerousness or mitigation special issues.

35. (37 RR 112, 119-20, 139). Wayne's girlfriend, 20-year-old Sheryl Ann Norris, stayed behind in Florida. (37 RR 134-35). In September of 1975, Sheryl joined Wayne in San Marcos, moving into apartment #602 with him. (37 RR 133-35). Sheryl soon got a job working as a secretary at the Crime Prevention Institute of Texas located just a few blocks from the apartment complex. (37 RR 104, 112-14, 138). Although she felt homesick occasionally, she was excited about the opportunity to begin a new life in Texas. (37 RR 91).

On November 24, 1975, Sheryl went to work at 8:00 a.m. and stayed there until about noon, when she went back to her apartment for lunch. (37 RR 110). She was particularly excited because, the following day, she was going to meet her older sister to see a concert in Alabama before heading to visit her family in Florida for the Thanksgiving holidays. (37 RR 92, 110). When she did not return to the office after lunch, her boss was not concerned because Sheryl had mentioned earlier in the day that she wanted to get off early from work to go home and pack for the trip. (37 RR 114-15).

Sheryl's boyfriend, Wayne, called the apartment several times over the lunch hour knowing Sheryl would be there, but got no answer and left messages. (37 RR 137-38). After finishing his exam on campus that afternoon, Wayne picked up his car around 5:00 p.m. at the mechanics and then headed for home. (37 RR 138-39).

As Wayne walked up the stairs towards their apartment, he immediately noticed that their front door was ajar, which worried him because the couple always locked the door. (37 RR 37 RR 140). Entering the apartment, Wayne found the stereo blaring, which was unusual because they never played their music loudly. (37 RR 141-42). Wayne also noticed that the rug was "all crumpled up," which was out of the ordinary because their apartment customarily was tidy. (37 RR 142, 148). Wayne called out to Sheryl but got no answer, so he walked towards the bedroom and then the across the corridor to their bathroom looking for her. (37 RR 142-43).

When he entered the bathroom, Wayne saw Sheryl laying face up, bent backwards over the bathtub with her head, lower arms, and shoulders submerged in the tub which was almost full with water. (37 RR 144, 214, 263). She had on the white blouse and pair of boots that she had worn to work that morning, but that was all. (37 RR 144, 214, 258). Sheryl's pants and panties were off and were bunched around the lower part of one of her boots, which she was still wearing. (37 RR 214). In panic, Wayne reached down to help Sheryl and immediately felt she was stiff. (37 RR 144). Fearing the assailant might still be present, Wayne ran to a neighbor's home and called the police. (37 RR 145).

Evidence at the crime scene indicated that Sheryl struggled with her attacker and had been sexually assaulted before her murder. (38 RR 85). Investigating officers

found a dollar bill and coins scattered on the floor which was out of the ordinary for the otherwise tidy apartment. (37 RR 181, 184, 253). There was also a hole in the sheetrock of the wall near a light switch in the living room. (37 RR 225-26). A white powdery substance that matched the sheetrock was recovered from the toe of Sheryl's right boot, the upper area of her left boot, and inside her pants. (37 RR 226-27). Feces were discovered in the middle of the bed, the edge of a sheet, the floor of the bathroom by Sheryl's foot, and underneath her body. (37 RR 258, 260). Blood and feces were also found on Sheryl's buttocks and genital area. (37 RR 218, 265). Two scarves were knotted tightly around her neck like a ligature. (37 RR 214, 220-21). A wristwatch that Sheryl was wearing at the time of her murder was submerged under water with the clock stopped at 12:31 p.m., which would have been just 15 to 20 minutes after she returned home from work. (37 RR 263). Investigators believed that given the short time frame of events, the perpetrator of the rape was also the murderer.

It was subsequently determined that Sheryl's death was a homicide caused by strangulation or drowning. (38 RR 99). During the autopsy, Dr. Charles Bell collected evidence and specimens that were submitted to the Texas Department of Public Safety (DPS) Crime Laboratory in Austin for scientific analysis. A vaginal swab revealed the presence of semen, but no suspect was generated. (37 RR 222-23, 224-

25, 227-30). At the time, forensic testing was fairly limited to presumptive tests for the presence of blood, sperm searches, and RFLP or blood group comparisons. (37 RR 206, 227-30).

In October 1997, the case was re-submitted to the DPS Crime Lab for new analysis and evaluation for the recovery of any evidence. (37 RR 237; 38 RR 140-41). DNA testing using PCR analysis was attempted, but yielded no results or no interpretable results. An extract obtained from the vaginal smear slide in 1997. (39 RR 71-73, 81). The same extract was again tested for DNA in 1999 by the DPS Crime Lab, but this time using STR analysis. (39 RR 151-52). One partial DNA profile from an unknown contributor was identified; however, the profile contained an insufficient number of loci to allow DPS to run it through CODIS. (39 RR 170).

With the advent of MiniFiler, a more advanced type of PCR testing, San Marcos Police Detective Penny Dunn requested the DPS Crime Lab analyze a vaginal smear slide. (38 RR 149). On July 6, 2010, DPS Forensic Scientist Negin Kuhlmann reported that she obtained a sufficient DNA profile by using MiniFiler, which amplifies DNA profiles contained in degraded samples. (38 RR 150; 39 RR 60-63, 222). The newly-obtained DNA profile was entered into CODIS. (39 RR 228). On August 5, 2010, the DPS Crime Lab advised that there was a "hit" in the CODIS database, which means a match with an offender in the CODIS system. (38 RR 151;

39 RR 160). On August 9, 2010, the offender was verified by CODIS as being "Willie Roy Jenkins (B/M, DOB: 07/30/1953)." (38 RR 152).

At the time the suspect profile was identified, Appellant was being held at the Coalinga State Hospital in Fresno County, California, under a civil commitment.[3] San Marcos Police Officer Penny Dunn and Corporal Scott Johnson traveled to California to obtain a specimen for direct comparison to the evidentiary DNA. (38 RR 157). After securing a search warrant, the officers obtained a buccal swab (saliva) specimen from Appellant. (38 RR 158). The officers interviewed Appellant about the capital crime, but he denied ever knowing the victim and stated that he did not know what the officers were talking about. (38 RR 159).

Appellant's saliva sample was secured until September 2, 2010, when Corporal Johnson delivered it to the DPS Crime Lab for analysis and direct comparison to the evidentiary DNA. (39 RR 236-37). On September 15, 2010, DPS Forensic Scientist Kuhlmann advised that Appellant could not be excluded as a contributor to the DNA profile obtained from the vaginal smear slide 14-B. (39 RR 237-38). The probability of seeing someone else with the same DNA profile as Appellant was 1 in 365.6 quadrillion Caucasians, 1 in 5.705 quadrillion blacks, and 1 in 20.37 quintillion

---

[3] The trial court granted the defense's motion in limine which prevented the State from informing the jury during the guilt/innocence phase that Appellant had been designated a "sexually violent offender" by the State of California. (2 CR 231-33, 236).

-10-

Hispanics. (39 RR 245). Appellant's DNA profile was additionally identified in a handprint on the shoulder of the white blouse that Sheryl Ann Norris had been wearing at the time of her death. (38 RR 162-65; 39 RR 248-50, 255-58). The probability of another black individual having the same DNA profile as Appellant's was reported to be 1 in 44.68 trillion blacks. (39 RR 259).

Records obtained from the military established that in 1975, Appellant was enlisted in the United States Marine Corps and stationed at the base in Twentynine Palms, California. (38 RR 187; 49 RR at SX-66). However, Appellant was granted emergency leave from the base for a period of thirteen days that began on November 22, 1975, just two days before the capital murder. (38 RR 192-93). During that time, Appellant traveled to Texas to visit his wife who was then hospitalized in San Antonio. (29 RR 30-32). He also stayed at the home of his wife's father in Marion, Texas, which is located about 30 miles from San Marcos where the murder occurred. (29 RR 38). Appellant was no stranger to the area: he grew up in Marion and attended one semester at Southwest Texas State University on a football scholarship before quitting to join the Marines. (38 RR 153; 39 RR 24-25).

The defense moved for an instructed verdict, alleging that the State failed to establish that Appellant was guilty of murder and that DNA evidence only connected Appellant to a sexual assault, and the trial court denied the motion. (39 RR 282). The

defense presented no witnesses at the guilt-innocence stage. During closing argument, defense counsel presented the following defensive theories: that DNA evidence proves Appellant committed a sex act, possibly forcibly, but not a murder (40 RR 24-25, 28); that Sheryl's boyfriend Wayne was a "dope dealer" who might have exposed her to individuals who caused her death (40 RR 27-28); that the State never checked Wayne's alibi (40 RR 25); and that the State failed to meet its burden of establishing Appellant's guilt beyond a reasonable doubt because the ligatures tied around Sheryl's neck were lost and had never tested for DNA (*id.* at 26-27).

## SUMMARY OF THE ARGUMENT

**State's Reply to Point of Error 1:** Appellant fails to brief his stated claim that evidence is insufficient to show that he deliberately killed Sheryl Ann Norris. Instead, he asserts that there is no evidence linking him to the killing, which is a challenge to the sufficiency of the evidence at trial. By failing to brief the initial issue, Appellant has waived it on appeal. Regardless, the evidence is legally sufficient to support Appellant's capital murder conviction and the jury's affirmative answer to the deliberateness special issue. The evidence at trial established a well-confined timeline of events proving that Appellant's commission of aggravated rape was attendant to Sheryl's death, both circumstantially and forensically. Appellant's DNA profile was identified in semen located inside the victim and on her clothing. The medical

-12-

examiner's testimony and evidence regarding the positioning of Sheryl's body was consistent with someone being deliberately strangled and drowned. The Court should therefore overrule Appellant's first point of error.

**State's Reply to Point of Error 2:** The trial court properly admitted DNA evidence which conclusively linked Appellant's DNA profile to semen recovered from inside and on the victim. Following a hearing, the trial court denied Appellant's motion to suppress all DNA results as fruit of the poisonous tree. Appellant complained that the DPS Crime Lab failed to use a reagent blank and thus never should have submitted any DNA profile into CODIS. The FBI standards that Appellant relied upon did not apply to extracts obtained in 1997. Regardless, the DPS Crime Lab did use a reagent blank in 1997, and subsequent testing in 1999 and 2010 using the same extraction did not need a new reagent. Because the trial court did not abuse its discretion in denying Appellant's motion, the Court should reject Appellant's claim.

**State's Reply to Point of Error 3:** The trial court did not prevent Appellant from presenting mitigating evidence at punishment. Prior to trial, Appellant filed an "Offer to Enter Plea of Guilty." He cites noting in the record to prove that he ever tried to introduce this "evidence" at punishment and was denied by the trial court. The Court should reject the claim as inadequately briefed and waived on appeal.

**State's Reply to Point of Error 4**: Although juror misconduct did occur when one juror sent text messages to a childhood friend, the trial court took appropriate remedial actions that preserved the integrity of the punishment phase proceedings. Because Appellant failed to show harm, the trial court did not abuse its discretion in denying a new trial.

**State's Reply to Point of Error 5:** Appellant fails to show error in the four preceding claims, so the Court should reject his claim of cumulative error because non-error cannot be aggregated.

**State's Reply to Points of Error 6 to 19**: In fourteen points of error, Appellant rehashes arguments that have been rejected by this Court on multiple occasions over many years—the "10-12" Rule and no instruction on the effect of a hold-out juror (Issue 6); no instructions on victim impact evidence (Issue 7); no instructions defining "probability," "criminal acts of violence," "militates," and "continuing threat to society" (Issues 8, 9, 10, 11); no instruction limiting militating evidence to that which might reduce moral blameworthiness (Issue 12); no instruction requiring consideration of mitigating evidence (Issue 13); no instruction that there is no presumption in favor of death or requirement to consider mitigating circumstances independently (Issue 14); no instruction providing a vehicle for jurors to return a verdict for life imprisonment (Issue 15); failure to quash the indictment because the

special issues were not pled as required under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (Issue 16); failing to preclude the death penalty as a sentencing option based on *Bush v. Gore*, 531 U.S. 98 (2000) (Issue 17); no vehicle for jurors to express a "reasoned moral response" to the evidence (Issue 18); and no satisfactory process for jurors to consider and give effect to mitigating circumstances (Issue 19).

Appellant failed to present several claims to the trial court (Issues 7, 10, 12, 14, 15, 16(b)-(e), 18 and 19), and must show fundamental error and egregious harm on appeal. Regardless, he cannot show that any claim has merit. Appellant cannot overcome the presumption that jurors understood the instructions in their intended meaning, followed the instructions given, and acted rationally in discharging their duties. *See*, e.g., *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996); *Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993). The special punishment issues and instructions submitted to the jury have consistently been found to be constitutional, and Appellant suggests nothing new for this Court to hold otherwise. Because the issues have been thoroughly litigated, examined, explained, and rejected *ad infinitum*, the Court should overrule Appellant's sixth to nineteenth points of error.

# ARGUMENT

## STATE'S REPLY TO POINT OF ERROR 1
## (SUFFICIENCY OF THE EVIDENCE)

In his first point of error, Appellant contends that his death sentence must be reformed to life imprisonment because the evidence is legally insufficient to establish that he deliberately caused the death of Sheryl Ann Norris. (Appellant's Br. 47-49) The first special issue at punishment concerned whether Appellant caused Norris's death deliberately. (2 CR 336). However, Appellant also contends that he is entitled to an acquittal because the State failed to prove the underlying offense of murder. (Appellant's Br. 49).[4] Regardless, the evidence is legally sufficient to support the jury's verdict at trial and its affirmative answer to the deliberateness issue so the Court should overrule Appellant's first point of error.

> *The evidence is legally sufficient to support Appellant's capital murder conviction.*

The indictment in this case alleged that Appellant intentionally caused the death of Sheryl Ann Norris by strangling her (paragraph One) or drowning her (paragraph Two) in the course of his committing or attempting to commit aggravated

---

[4]    Appellant states that his sentence should be reformed to a life sentence and that he is entitled to an acquittal. (Appellant's Br. 47, 49). Acquittal is not an option if the Court finds that evidence is legally insufficient to support an affirmative answer to a special issue. Instead, Article 44.2511(b) of the Texas Code of Criminal Procedure requires that a sentence of death be reformed to a sentence of confinement for life.

-16-

rape. (1 CR 4). At the close of evidence, the jury convicted Appellant of capital murder as charged in the indictment. (2 CR 327).

In reviewing the sufficiency of the evidence, an appellate court must determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and [can alone] be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

A person commits murder if he "intentionally or knowingly causes the death of an individual." Tex. Penal Code § 19.02(b)(1). A person commits capital murder if he "commits murder as defined under Section 19.02(b)(1), and: . . . (2) the person intentionally commits the murder in the course of committing or attempting to commit . . . aggravated sexual assault[.]" *Id.*, § 19.03(a). Appellant concedes in his brief that evidence "may support a rational jury's finding of aggravated sexual assault," but argues there is "no evidence" to support a finding of murder and that the scarves recovered from around the victim's neck were lost. (Appellant's Br. 49).

-17-

The evidence at trial established a well-confined timeline of events proving that Appellant committed the aggravated rape of Sheryl Ann Norris and that the rape was attendant to her death, both circumstantially and forensically. Sheryl's former supervisor testified that on November 24, 1975, Sheryl left the office at 12:05 p.m. (37 RR 110). A map of the area showed that Sheryl's apartment was located only a short distance from work, which made it a 5 or 10 minute trip for her to return home. (37 RR 112-14, 138; 49 RR at SX-15). Sheryl's body was found partly submerged in water in the bathtub, with her neck tightly tied with ligatures. (37 RR 177, 186, 212, 220; 38 RR 102, 108; 49 RR at SX-40 to SX-42, SX-49). Her watch, also submerged in water, had stopped at 12:31 p.m., just 15 to 20 minutes after she would have returned home. (37 RR 263; 38 RR 110; 49 RR at SX-51). Forensic testing identified Appellant's DNA profile in semen recovered inside Sheryl's body and in the handprint found on her white shirt. (37 RR 222-23; 39 RR 255-56, 237-38). Because the evidence only supports a theory that Appellant was continually involved the crime from beginning to end, the evidence is legally sufficient to support the jury's verdict that Appellant was guilty of capital murder beyond a reasonable doubt.

### *The evidence is legally sufficient to support the jury's affirmative answer to the deliberateness special issue.*

To the extent Appellant challenges the sufficiency of the evidence showing the

-18-

he deliberately caused Sheryl Ann Norris's death, the claim should be rejected. Appellant provides no explanation for why he believes the evidence is insufficient apart from the caption of his claim. (Appellant's Br. 47-49). His contention that the State failed to prove he committed murder and that scarves were lost are, at best, challenges to the sufficiency of the evidence at trial. (Appellant's Br. 49). Appellant's claim is inadequately briefed and the issue is therefore waived on appeal. *See* Tex. R. App. P. 38.1(i) (requiring a brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities). Even if the claim is preserved, the evidence is legally sufficient to show that Appellant acted "deliberately" within the meaning of Tex. Code Crim. Proc. art. 37.0711, § 3(b)(1).

At the punishment phase, the jury answered affirmatively the first special issue which asked "Do you find from the evidence beyond a reasonable doubt that the conduct of the Defendant, Willie Roy Jenkins, that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the decedent, Sheryl Ann Norris, would result?" (2 CR 336). This Court reviews the sufficiency of the evidence supporting the jury's affirmative finding using the *Jackson v. Virginia* legal-sufficiency standard.[5] Before answering "yes" to the

---

[5] Challenges to the sufficiency of the jury's affirmative answer to the deliberateness special issue were previously reviewed for factual sufficiency. *Wardrip v. State*, 56 S.W.3d 588, 591 (Tex. Crim. App. 2001) (citing *Clewis v. State*, 922 S.W.2d 126,

deliberateness special issue, the jury needed to find "a moment of deliberation and the determination on the part of the actor to kill[.]" *Cannon v. State*, 691 S.W.2d 664, 667 (Tex. Crim. App. 1985). "An act need not be premeditated to be deliberate, however, and the killing may occur during a 'frenzy.'" *Wardrip v. State*, 56 S.W.3d at 592 (citing *Havard v. State*, 800 S.W.2d 195, 212 (Tex. Crim. App. 1989), and *Granviel v. State*, 552 S.W.2d 107, 122-23 (Tex. Crim. App. 1976)).

In this case, the evidence of the circumstances of the capital crime is sufficient to support the jury's determination that Appellant acted deliberately in causing the death of Sheryl Ann Norris. A rational trier of fact would have found the above-described timeline of events to be compelling evidence of Appellant's deliberate conduct. Additionally, the medical examiner testified that death by drowning or strangulation is not a quick death (38 RR 114-15); that it is typical a victim would struggle with the assailant (*id.* at 116); that even if the victim temporarily loses consciousness after having blood flow cut off, the assailant must continue to exert sufficient force for several minutes in order to kill the victim (*id.* at 116-17); and that death by strangulation at the hands of another is not something that occurs unintentionally (*id.* at 117). The deliberateness of Appellant's actions are also shown

---

129 (Tex. Crim. App. 1996)). The Court subsequently "overruled *Clewis* and, in effect, overruled the *Wardrip* factual-sufficiency holding as well." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010) (citing *Brooks v. State*, 323 S.W.3d at 895).

by the tightly knotted ligature around Sheryl's neck and the fact that she was bent over backwards in the bathtub submerged in water. (37 RR 177, 186, 212; 38 RR 102, 108; 49 RR at SX-40 to SX-42, SX-49). Jurors were also faced with evidence of the frenzied nature of Appellant's attack including money scattered on the floor; the hole in the sheetrock wall and white powdery substance on Sheryl's boot and clothing; a trial of feces leading from the center of the bed, to the sheet, to the bathroom floor, and underneath Sheryl's body; and the presence of blood mixed with feces around Sheryl's buttocks and genital area. (37 R R 218, 258, 260). The jury had sufficient evidence to find beyond a reasonable doubt that when Appellant left Sheryl bent over backwards in a tub full of water with her head submerged and a scarf tightly knotted around her neck, that it would be reasonable to believe her death would result. The Court should therefore overrule Appellant's first point of error.

## STATE'S REPLY TO POINT OF ERROR 2
## (FAILURE TO SUPPRESS DNA EVIDENCE)

Appellant contends that the trial court erred in failing to suppress any and all DNA evidence and testimony due to the failure of the testing to meet quality assurance standards. (Appellant's Br. 49-55). On the record in this case, the trial court properly admitted reliable scientific DNA evidence which conclusively linked Appellant's DNA profile to semen recovered from inside and on the victim.

Determination of the admissibility of evidence rests within the sound discretion of the trial court. The trial court's admission of evidence will not be disturbed absent a clear abuse of discretion. To show a clear abuse of discretion requires more than a showing that this Court disagrees with the trial court's determination of the issue. Rather, a clear abuse of discretion is shown only when the trial court's determination falls outside "the zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 386, 391 (Tex. Crim. App. 1991). An appellate court's review in conducted in light of the evidence before the trial court at the time the disputed ruling was made. *Hayes v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1990).

This Court applies a three-part reliability test to determine the admissibility of scientific testimony under Tex. R. Evid. 702: (1) the scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique in question must have been properly applied on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

Appellant filed a motion to suppress "any and all DNA evidence and testimony which the State intends to offer" contending that the results were unconstitutionally obtained as fruit of the poisonous tree. (2 CR 317-18). More specifically, Appellant claimed that all DNA samples uploaded into CODIS must satisfy the FBI's quality assurance standards which include using a reagent blank control. (2 CR 317).

-22-

Appellant's motion stated that no reagent blank control was used by the DPS Crime Lab in 1997 when it extracted the original DNA sample from the vaginal smear (item 14-B) and continuing through the final DNA testing in 2010 which generated the "hit" in the CODIS database. He argued that the DNA results should never have been loaded into CODIS because they lacked the quality required by FBI standards, Texas law, and DPS protocol. Appellant supported his motion with a "Deviation Report" issued by the DPS Crime Lab in June of 2010. (51 RR at DX-MS-1).

The trial court conducted a hearing on Appellant's motion during which it heard argument from the parties (39 RR 141-46), and the State presented three exhibits in rebuttal. (49 RR at SX-MS-1, -2, -3). At the conclusion of the hearing, the trial court denied Appellant's motion. (39 RR 146). The ruling was no abuse of the court's discretion.

The FBI standards that Appellant relied upon only apply to samples that are extracted "on or after July 1, 2009." (51 RR at DX-MS-1). Those standards did not apply to the extracts obtained by the DPS Crime in 1997. (39 RR 54, 57). Regardless, the DPS Crime Lab did use a reagent blank control when it obtained the original extractions in 1997, as evidenced by the Reagent Blank Extraction Log. (49 RR at SX-79A). The Standard Operating procedure followed by the DPS Crime Lab in 1997 went above and beyond the standards required by the FBI at the time the extract was

obtained. (*See* 49 RR at SX-MS-2). Additionally, before the hearing, Javier Flores, the former DPS forensic examiner who obtained the original extraction from the vaginal smear slide in 1997, testified before the jury regarding the "checks and balances throughout the screening, extraction, amplification, and interpretation processes," the use of proficiency testing and certification, and the fact that the DPS Crime Lab is nationally accredited. (E.g., 39 RR 53-56).

Appellant argues that the State failed to meet its burden because "the State's very own witnesses explained they did not perform the reagent blanks on the old extractions made by Javier Flores." (Appellant's Br. 55). There was testimony following the hearing from DPS forensic examiners Cassie Carradine and Negin Kuhlmann in which both witnesses explained that no reagent was used for additional testing conducted on the existing extract. (*E.g.*, 39 RR 193, 204, 227). That testing did not violate the FBI standards relied on at the hearing. Reagent blanks were used for any new samples that were obtained as well as when a sample of the "old" extract was amplified. (39 RR 193, 209-10, 227; 49 RR at SX-79B). While this testimony strengthens the State's argument, it is not relevant to this Court review because it was not part of the record at the time the trial court denied Appellant's motion. *Hayes v. State*, 982 S.W.2d at 482.

Considered together, Appellant failed to show that the DNA results were scientifically unreliable and warranted suppression. Because the trial court did not abuse its discretion in denying Appellant's motion, the Court should affirm the ruling and overrule Appellant's point of error.

## STATE'S REPLY TO POINT OF ERROR 3
## (ADMISSIBILITY OF EVIDENCE OF WILLINGNESS TO PLEA)

In his third point of error, Appellant argues that the trial court erred in not allowing evidence of his willingness to enter a plea to aggravated sexual assault because the evidence was relevant to the jury's deliberation of the mitigation special issue. (Appellant's Br. 55-56). Appellant fails to adequately brief the issue and waives it on appeal. In any event, the trial court did not prevent Appellant from presenting mitigating evidence.

An appellate court reviews a trial court's exclusion of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d at 391. An abuse of discretion of established "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

Prior to trial, Appellant filed an "Offer to Enter Plea of Guilty" stating that he "hereby offers to enter a plea of 'Guilty' to the offense of Capital Murder in exchange

for a sentence of life imprisonment." (2 CR 264). The "Offer" also stated that Appellant was willing to plead guilty to burglary of a habitation with intent to commit sexual assault, but wanted to enter the two pleas on separate dates so that TDCJ might not consider them a single plea making the sentences stacked. (*Id.*).

Although Appellant asserts that his offer "was denied," he does not indicate by whom or what authority. (Appellant's Br. 55). Even more importantly, Appellant cites noting in the record establishing that he ever tried to introduce this so-called "evidence" at punishment and was denied by the trial court. Rule 38.1(h) of the Texas Rule of Appellate Procedure requires that a brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Inadequately briefed issues like Appellant's may be waived on appeal. *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); *see Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (affirming that court has no obligation "to construct and compose" a party's "issues, facts, and arguments 'with appropriate citations to authorities and to the record'") (citing Tex. R. App. P. 38.1(e),(f), (h)).

Yet even if Appellant could prove the trial court denied his request to present the instant offer to plea as mitigating evidence at punishment, a defendant does not automatically have a right to introduce self-serving documentary evidence simply

because he claims it has mitigating value. If Appellant was actually remorseful for his crimes, he could have taken the stand and testified to that fact at punishment. Because Appellant's claim does not show error on any part by the trial court, the Court should not hesitate to overrule this point of error.

## STATE'S REPLY TO POINT OF ERROR 4 (FAILURE TO GRANT A MISTRIAL)

Appellant contends that the trial court erred in denying his motion for mistrial after it was brought to the trial court's attention that a juror had sent text messages during trial. (Appellant's Br. 56-60). Article 36.22 of the Texas Code of Criminal Procedure provides that "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." Tex. Code Crim. Proc. art. 36.22. "When a juror converses with an unauthorized person about the case, injury is presumed, and a new trial may be warranted." *Hughes v. State*, 24 S.W.3d 883, 842 (Tex. Crim. App. 2000). No new trial was warranted here because the trial court's actions remedied the situation and preserved the integrity of the punishment phase proceedings. The Court should affirm the trial court's ruling as no abuse of discretion and reject Appellant's point of error.

A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007)."An appellate court views the

evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). The trial court's ruling must be uphold if it was within the "zone of reasonable disagreement." *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). An abuse of discretion exists "when no reasonable view of the record could support the trial court's ruling." *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

While the record in this case evidences juror misconduct, it does not support that Appellant suffered any injury as a result. During the punishment phase proceedings, the trial court was contacted by Judith Davis, a local attorney, who had information that juror Tim Altenhoff had communicated with a friend about the capital case. (45 RR 6). Ms. Davis attested that Mr. Altenhoff recently sent several text messages to Jan Ellis, a mutual friend who lived in New York City, asking Ms. Ellis to call him so that he could tell her about the murder trial. (45 RR 6, 8). The trial court conducted a hearing on juror misconduct during which Ms. Davis testified that Jan Ellis contacted her about having received text messages from Mr. Altenhoff. (45 RR 8-9). Ms. Ellis forwarded the text messages to Ms. Davis, and they were read into the record along with the text messages exchanged between Davis and Ellis. (45 RR 11-15). In the first message to Ms. Ellis, Mr. Altenhoff texted: "What's up? If you

have a few minutes, give me a call at home and I'll tell you what I can about the murder trial I'm on." (45 RR 12). In a second message, Mr. Altenhoff sent his phone number. (45 RR 12-13). Ms. Ellis asked the name of the case and Mr. Altenhoff replied: "State versus Willie Jenkins." (45 RR 13, 14). When Ms. Ellis texted "That can't be the one from when we were in high school?," Mr. Altenhoff replied "Yep." (45 RR 15). Ms. Ellis additionally sent a message to Davis saying that she did not remember any discussions about the case in 1975, but "[w]e were in high school and everybody knew about it." (45 RR 14).

Appellant moved for a mistrial based on juror Altenhoff's prohibited communication with Jan Ellis. (45 RR 24). The State did not dispute that misconduct occurred under Article 36.22. In order to determine whether Appellant suffered injury, all twelve jurors were questioned about whether Mr. Altenhoff had discussed information outside the record that concerned the case and whether any juror had any knowledge of his violating any other instructions from the court. Each juror answered the questions negatively. (45 RR 35-36, 37-39, 40-41, 41-43, 44-45, 46-48, 48-49, 50-51, 52-53, 53-54, 55-56, 56-57). Finally, Mr. Altenhoff testified that he did not remember anything about the capital murder until he was called for jury duty and did not recall this case being the murder that occurred while he was in high school until Jan Ellis mentioned it in the text message. (45 RR 70-71).

The trial court found that Mr. Altenhoff violated the court's instructions by texting someone (45 RR 74); there has been no sharing of any information by Mr. Altenhoff with the jurors (45 RR 58); that the misconduct was "not as big and major an issue" after talking to all twelve jurors (45 RR 74); that the person who actually remembered about the murder being from around the time of high school was Jan Ellis, not Altenhoff (45 RR 74, 76); and that Mr. Altenhoff's testimony was credible in responding that he did not remember the murder (45 RR 76). The court therefore overruled Appellant's motion for mistrial. (45 RR 76).

This Court has cautioned that a mistrial is an extreme remedy that should be granted "only when residual prejudice remains" and after less dramatic alternatives are explored. *Ocon v. State*, 284 S.W.3d at 884-85. Consistent with that holding, the trial court remedied the juror misconduct by striking Mr. Altenhoff, replacing him with the alternate juror, questioning all the jurors about potential harm, and instructing the jury to refrain from any communications and to follow to follow the rules imposed on them. Because Appellant cannot show that the denial of a mistrial was an abuse of discretion, the Court should overrule this point of error.

## STATE'S REPLY TO POINT OF ERROR 5
## (CUMULATIVE ERROR)

Appellant asserts that when his four preceding claims of insufficiency of the

evidence and trial-court error are viewed together, the combined effect deprived him of a fundamentally fair trial. (Appellant's Br. 61-62). Appellant cannot avail himself of the cumulative error doctrine.

This Court has recognized that the cumulative effect of several errors can, in the aggregate, constitute reversible error even though no single instance of error would suffice. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). For the doctrine to apply, the alleged errors must actually constitute error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009). Non-errors cannot become error cumulatively. *See id.*

Appellant's first four points of error are all without merit, as set forth in the State's reply to each claim above. Because there is no individual error, there is nothing that could interact to have a cumulative effect. The Court should hold that this claim is meritless and overrule Appellant's fifth point of error.

### STATE'S REPLY TO POINT OF ERROR 6 ("10-12" RULE AND NO INSTRUCTION ON EFFECT OF HOLD-OUT JUROR)

Appellant raises seven claims challenging the constitutionality of the trial court's jury instructions on the "10-12" Rule and the prohibition against informing

the jury of the effect of a single hold-out juror. (Appellant's Br. 62-72).[6] He maintains that the trial court's instructions, or lack thereof in the case of the hold-out juror, violated his Sixth, Eighth, and Fourteenth Amendment rights. To the contrary, the trial court did not err because this Court has previously rejected the claims currently advanced by Appellant.

The trial court properly instructed the jury, in accordance with Tex. Code Crim. Proc. art. 37.0711, § 3(d)(1)-(2), that in deciding whether Appellant deliberately caused the death of Sheryl Ann Norris, "You may not answer Special Issue Number One 'Yes' unless you agree unanimously" and "You may not answer [the issue] 'No' unless ten (10) or more jurors agree." (2 CR 331). The jury received a similar instruction regarding its deliberation of the second special issue on future dangerousness. (2 CR 331-32). The jury was further instructed, pursuant to article 37.0711, § 3(f)(1)-(2), that if it reached the final special issue on mitigation, "You may not answer Special Issue Number Three 'No' unless you agree unanimously" and "You may not answer [the issue] 'Yes' unless ten (10) or more jurors agree." (2 CR 332). The trial court did not inform the jury of the effect of a failure of the jury to

---

[6] Appellant presented his arguments in a "Motion to Declare the '10-12 Rule' Unconstitutional," which was denied. (1 CR 32-56; 2 CR 261). He also filed a "Motion for Jury Instruction" on the failure of jurors to agree on answers to the special issues. (1 CR 135-38). The request was presumably denied since no instruction was provided.

-32-

agree on a special issue. Tex. Code Crim. Proc. art. 37.0711, § 3(i).

Appellant asserts that the trial court's instructions were unconstitutional, although he acknowledges his claims have been rejected. (Appellant's Br. 63 & n. 5) (citing *Lawton v. State*, 913 S.W.2d 542, 558 (Tex. Crim. App. 1995); *Lagrone v. State*, 942 S.W.2d 602, 620 (Tex. Crim. App. 1997)). Appellant offers no reason for the Court should reconsider its prior decisions. Nor should the Court do so.

In Point of Error 6(a), Appellant asserts that the 10-12 Rule violates the Eighth Amendment's need for heightened reliability. (Appellant's Br. 64-65) (citing *Caldwell v Mississippi*, 472 U.S. 320, 323 (1985)). This Court has already decided the issue adversely to Appellant. *Prystash v. State*, 3 S.W.3d 522, 536-37 (Tex. Crim. App. 1999) (explaining that one of the underlying values of the *Caldwell* decision "is to ensure the proper level of juror deliberation," and that the 10-12 Rule "serves this value by not giving the jury the consequences of a nonverdict, while at the same time it ensures that the death penalty will not be imposed without the unanimous consent of the jury"); *accord Davis v. State*, 782 S.W.2d 211, 221-22 (Tex. Crim. App. 1989) (rejecting Due Process claim based on failure to inform the jury about the effect of a failure to agree on a special issue).

In Point of Error 6(b), Appellant alleges that the trial court's jury instructions violate the constitutional principles in set forth in *Mills v. Maryland*, 486 U.S. 367

-33-

(1988). (Appellant's Br. 65-66). This Court has distinguished *Mills* and decided the issue adversely to Appellant. *E.g., Williams v. State*, 301 S.W.3d 675, 694 (Tex. Crim. App. 2009); *Busby v. State*, 253 S.W.3d at 667; *Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005); *Lawton v. State*, 913 S.W.2d at 558-59.

In Point of Error 6(c), Apellant argues that the 10-12 Rule denies the right to a fair and impartial trial because jurors might have misconceptions about the law and are forced to guess about the effect of a deadlock. (Appellant's Br. 66-68) (citing *Lockhart v. McCree*, 476 U.S. 162 (1986)). Appellant's speculation is no ground for error. This Court has "consistently held that '[t]here is no constitutional prohibition to concealing from the jurors the consequences of their deliberations, so long as they are not misled into believing that ultimate responsibility for the verdict rests elsewhere.'" *Threadgill v. State*, 146 S.W.3d 654, 673 (Tex. Crim. App. 2004) (quoting *Prystash v. State*, 3 S.W.3d at 532).

In Point of Error 6(d), Appellant contends that the 10-12 Rule prevents a defendant from receiving effective assistance of counsel because it disallows "informing the jury of the true state of the law." (Appellant's Br. 68) (citing *Burley v. Cabana*, 818 F.2d 414, 418 (5th Cir. 1987)). In *Burley*, the Fifth Circuit Court of Appeals held that trial counsel was ineffective under *Strickland* because counsel failed to correct the trial court's erroneous statement that it believed a life sentence

-34-

was mandatory. 818 F.2d at 417-18. That situation did not occur here. Appellant does not identify any incorrect or erroneous statement in the jury charge for which counsel was constitutionally ineffective in failing to call to the trial court's attention. If Appellant maintains that the "true state of the law" means informing the jury about the consequence of the jury's potential inability to answer a special issue, his argument fails. The Court has rejected the claim that the 10-12 Rule affirmatively disallows the trial court or its officers from curing any "misleading effect" and held that jurors are not misled by the instructions. *Hathorn v. State*, 848 S.W.2d 101, 124-25 (Tex. Crim. App. 1992)(citing *Draughon v. State*, 831 S.W.2d 331, 337 (Tex. Crim. App. 1992)). Again, there is "'no constitutional prohibition to concealing from the jurors the consequences of their deliberations[.]'" *Threadgill v. State*, 146 S.W.3d at 673 (quoting *Prystash v. State*, 3 S.W.3d at 532).

In Point of Error 6(e), Appellant contends that the 10-12 Rule has a coercive effect on the jury, thus rendering the trial court's instructions unconstitutional. (Appellant's Br. 69) (citing *Jenkins v. United States*, 380 U.S. 445, 446 (1965)). This Court has previously decided the issue adversely to Appellant. *Estrada v. State*, 313 S.W.3d 274, 306 (Tex. Crim. App. 2010) (citing *Escamilla v. State*, 143 S.W.3d 814, 828 (Tex. Crim. App. 2004)).

In Point of Error 6(f), Appellant argues that the 10-12 Rule violates his right to Equal Protection because it "leaves jurors in the dark" about the fact that their failure to unanimously agree on an answer to the special issues results in a life sentence. (Appellant's Br. 70). The Court has rejected Fourteenth Amendment claims in this very context. *Gonzales v. State*, 353 S.W. 3d 826, 837 (Tex. Crim. App. 2011); *Williams v. State*, 301 S.W.3d at 694; *Druery v. State*, 225 S.W. 3d 491, 509 (Tex. Crim. App. 2007).

Finally, in Point of Error 6(g), Appellant contends the 10-12 Rule deprived the jury of "an effective vehicle for expressing its reasoned moral response to the evidence it heard." (Appellant's Br. 71) (internal quotations omitted). However, Appellant does not identify any evidence that was beyond the scope of the three statutorily-mandated special issues. Appellant also contends that the State obtained a death sentence "while concealing a mechanism which might have resulted in a sentence of life[.]" (Appellant's Br. 71-72) (citing *Simmons v. South Carolina*, 512 U.S. 154, 169 (1994)). *Simmons* held that in a capital case "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." 512 U.S. at 156. Unlike *Simmons*, there was no information relevant to sentencing that was concealed from Appellant's jury. Appellant appears

to be contending that the trial court erred by not instructing the jury that each juror had the power to prevent assessment of the death penalty by blocking a unanimous verdict for the State. However, he has no constitutional or statutory right to such an instruction and the Court has rejected the claim. *Perry v. State*, 158 S.W.3d 438, 449 (Tex. Crim. App. 2004) (citing *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999)). Considered together, Appellant's arguments offer no basis for the Court to consider revisiting its well established precedent. The Court should overrule Appellant's sixth point of error.

## STATE'S REPLY TO POINT OF ERROR 7
## (NO INSTRUCTIONS ON VICTIM IMPACT EVIDENCE)

Appellant contends that the trial court's failure to instruct the jury regarding victim impact evidence violated his Eighth and Fourteenth Amendments of the United States Constitution. (Appellant's Br. 73-79). The complained-of, omitted instructions are (1) that the jury should have been instructed that its consideration of victim impact evidence should not be conducted in connection with the future-dangerousness special issue, (2) that the jury's consideration of victim impact evidence does not relieve the State of its burden to prove the "future dangerousness" issue beyond a reasonable doubt; (3) that the jury must disregard victim impact evidence that was not shown to be within the knowledge or reasonable expectation

-37-

of the defendant; and (4) that jurors may not make a comparative worth analysis of the value of the victims to their families and the community compared to the defendant or other members of society. (*Id.*).

In reviewing a claim of jury-charge error, an appellate court first determines whether error occurred. *See Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). If the defendant did object at trial, then he will obtain relief if the record shows that he suffered "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If he did not object, then he must show that the error was "fundamental" and that he suffered "egregious harm." *Id.*

Assuming for the sake of argument that Appellant was entitled to the above instructions, he never requested them from the trial court. He also has failed to identify any statutory provision requiring that the above-listed instructions be provided. Without the request for an instruction, Appellant would be entitled to relief only if the record showed that he suffered egregious harm. *Almanza v. State*, 686 S.W.2d at 171. He cannot make that showing.

As an initial matter, Appellant points to no specific testimony that is victim impact evidence. He states, at best, that "[c]onsiderable victim character and victim impact evidence was introduced at [his] trial, most notably from the deceased's sisters and also that her parents were now deceased, and died not knowing who killed their

daughter." (Appellant's Br. 74) (citing 37 RR 84; 38 RR 132 et seq.). The first cite is to a page of testimony from Sheryl's older sister (37 RR 84), while the second cite is to the entirety of testimony from Corporal Dunn (38 RR 132 et seq.). Without more, the Court has no reason to find that there is any victim impact testimony on which the trial court might have offered an instruction.

The Court also has no reason to find that jurors were urged to make any kind of comparative worth analysis. Appellant acknowledges in his brief that the State "did not explicitly" argue for such a comparison. (Appellant's Br. 78-79). In such instance, there would be no need for the trial court to offer any instruction to jurors against making a comparison.

In any event, the Court has held on more than one occasion that the trial court does not err in failing to submit the very instructions that Appellant now contends should have been submitted on appeal. *Leza v. State*, 351 S.W.3d 344, 361 & n. 71 (Tex. Crim. App. 2011) (citing *Mays v. State*, 318 S.W.3d 368, 391 & n. 85 (Tex. Crim. App. 2010); *Saldano v. State*, 232 S.W.3d at 105-07). Because Appellant offers no reason to reconsider established precedent, the Court should overrule his seventh point of error.

## STATE'S REPLY TO POINTS OF ERROR 8-11
## (NO INSTRUCTION DEFINING TERMS)

In his eighth, ninth, and eleventh points of error, Appellant complains that the trial court failed to define terms "probability," "criminal acts of violence," and "continuing threat to society," as used in the special issue on future dangerousness. (Appellant's Br. 79-85, 89-91). He asserts that because the terms were not defined, the special issue was "vague and overbroad," possibly resulting in the arbitrary and capricious imposition of a death sentence in violation of the Eighth and Fourteenth Amendments. In his tenth point of error, Appellant argues that the trial court's failure to define the term "militates" violated his First, Eighth, and Fourteenth Amendment rights by allowing the jury to consider "constitutionally protected personal characteristics" such as age, race, sex, national origin, religion, political views or sexual orientation as factors supporting a death sentence. (Appellant's Br. 85-89).

Appellant filed a "Motion to Quash Indictment" which alleged that the Texas capital sentencing statute is "vague and overbroad" for failing to define "probability," "criminal acts of violence," and "continuing threat to society." (1 CR 26-27). The trial court denied the motion. (2 CR 260). Appellant did not request that the term "militates" be defined. Nor did he object to the punishment charge on any basis. (47 RR 130-131). As a result, Appellant must show that the trial court's

instructions were erroneous and that he suffered some harm for his first three claims. *Almanza v. State*, 686 S.W.2d at 171. For his tenth point of error regarding "militates," he must show fundamental error and egregious harm. *Id.* He cannot make either showing.

The trial court properly instructed the jury that in deliberating the special issues, "You must consider all the evidence of the guilt or innocence stage and the punishment stage, including but not limited to evidence of the Defendant's background and character or circumstance of the offense that *militates* for or mitigates against the imposition of the death penalty." (2 CR 330-31, 331) (emphasis added). The jury returned an affirmative answer to Special Issue Number Two which asked "Do you find from the evidence beyond a reasonable doubt that there is a *probability* that the Defendant, Willie Roy Jenkins, would commit *criminal acts of violence* that would constitute a *continuing threat to society*?" (2 CR 337) (emphasis added). The terms "probability," "criminal acts of violence," "militates," and "continuing threat to society" are not statutorily defined, and no definition was provided by the trial court. (2 CR 330-35).

There is no error in the trial court's refusing to define any term identified by Appellant. The Court has rejected claims of constitutional error, explaining that the terms need no definition because jurors are presumed to understand their commonly

-41-

accepted meanings. *See, e.g., Leza v. State,* 351 S.W.3d at 362 (rejecting claim of constitutional error in failing to define the terms "militates," "criminal acts of violence," and "probability"); *Coble v. State,* 330 S.W.3d 253, 297 (Tex. Crim. App. 2010) (future dangerousness special issue is not unconstitutional because the terms "probability," "criminal acts of violence," and "society" are not defined); *Gardner v. State,* 306 S.W.3d 274, 302-03 (Tex. Crim. App. 2009) (no error in trial court's refusing to define the terms "probability," "criminal acts of violence," "militates," and "continuing threat to society" because "jury should give them their commonly accepted meanings"); *Feldman v. State,* 71 S.W.3d 738, 757 (Tex. Crim. App. 2002) (no definition needed for "probability," "criminal acts of violence," and "continuing threat to society"); *Ladd v. State,* 3 S.W.3d 547, 572-73 (Tex. Crim. App. 1999) (no definition needed for "criminal acts of violence," "probability," "continuing threat" and "society"); *Camacho v. State,* 864 S.W.2d 524, 536 (Tex. Crim. App. 1993) (no definition needed for "criminal acts of violence," "probability," and "society").

Appellant acknowledges that the Court has previously resolved each of his claim adversely to his position. (Appellant's Br. 80, 83, 90). Because Appellant provides no reason for the Court to consider reexamining its prior holdings, the Court should overrule Appellant's eighth, ninth, tenth, and eleventh points of error.

## STATE'S REPLY TO POINT OF ERROR 12 (NO INSTRUCTION LIMITING SCOPE OF MILITATING EVIDENCE)

Appellant maintains that the trial court violated the Eighth and Fourteenth Amendments of the United States Constitution by failing to instruct the jury so as to limit the scope of militating evidence to that which might increase a defendant's moral blameworthiness. (Appellant's Br. 92-94). He contends that unless the scope of militating evidence is limited in this manner, jurors might give weight to vague and overbroad factors beyond a defendant's control. Because Appellant failed to seek an instruction from the trial court and does not argue that he has suffered egregious harm as required under *Almanza*, 686 S.W.2d at 171, the Court should reject the claim.

The trial court correctly instructed the jury, in accordance with Tex. Code Crim. Proc. art. 37.0711, § 2(b)(1)-(2), that in deliberating the first two special issues, jurors "shall consider all the evidence of the guilt or innocence stage and the punishment stage, including but not limited to evidence of the Defendant's background and character or circumstance of the offense that militates for or mitigates against the imposition of the death penalty." (2 CR 330-331).

Appellant contends that an instruction limiting the scope of militating evidence was constitutionally required, but Appellant never requested such an instruction in

the trial court.[7] Nor did he object to the punishment charge before it was submitted to the jury. (47 RR 130-31). To preserve an issue for appeal, a party must make a timely, specific objection or motion in the trial court that states the grounds for the desired ruling with sufficient specificity to make the trial court aware of the complaint. Tex. R. App. P. 33.1(a)(1)(A). Appellant failed to preserve error in this instance and, on appeal, must demonstrate fundamental error and egregious harm. *Almanza v. State*, 686 S.W.2d at 171. He cannot make either showing.

There is no constitutional or legislative requirement for an instruction that limits the scope of militating evidence to that which a jury might consider as increasing a defendant's moral culpability. This Court has rejected arguments like Appellant's, explaining that the "statutorily mandated language requires the jury to look at all the evidence and not just evidence that a juror might find mitigating." *Gardner v. State*, 306 S.W.3d at 303 & n.92 (citing *Luna v. State*, 268 S.W.3d 594,

---

[7] Appellant states that he "raised various objections" to the definition of *mitigating* evidence as being that which might reduce a defendant's moral blameworthiness. (Appellant's Br. 94) (citing 2 CR 130). Page 130 of the Clerk's Record is contained in Volume 1. The cited page has nothing to do with Appellant's objections, but rather is a "Defendant's Motion for Discovery of Experts." (1 CR 130). Appellant did, however, object to the definition of *mitigating* evidence in his "Motion Requesting the Court to Find Tex. Code Crim. Proc. Art. 37.0711, Section 3(F)(4) to be Unconstitutional." (1 CR 57-61). There, he claimed the definition "unconstitutionally narrows the jury's discretion in sentencing to factors that concern only moral blameworthiness." (1 CR 58). Yet that contention is the opposite of Appellant's current argument—that the jury's deliberations of the first two special issues should be *limited* to considering evidence of moral blameworthiness.

-44-

610 (Tex. Crim. App. 2008); *Scheanette v. State*, 144 S.W.3d 503, 507-08 (Tex. Crim. App. 2004)). And in *Russeau v. State*, 291 S.W.3d 426 (Tex. Crim. App. 2009), the Court held:

> Appellant's argument has no merit. First, the jury, in its deliberations on the first two special issues, was not limited to evidence 'which a juror might regard as increasing [the] defendant's moral blameworthiness.' The jury could properly consider any of the evidence submitted at trial that was relevant to the two special issues. Second, appellant did not ask the trial court for the instruction that he now claims is constitutionally required, and nothing in the record suggests that he suffered any harm, let alone egregious harm, from the lack of such an instruction.

*Id.* at 435-36 (citing *Almanza*, 686 S.W.2d at 171). Appellant does not acknowledge the Court's controlling precedent, nor attempt to distinguish it from the facts in this case. The Court should therefore overrule Appellant's twelfth point of error.

## STATE'S REPLY TO POINT OF ERROR 13
## (NO INSTRUCTION THAT FINDING OF GUILT DOES NOT FORECLOSE CONSIDERATION OF MITIGATING EVIDENCE)

Appellant alleges that the trial court violated the Eighth and Fourteenth Amendments of the United States Constitution by failing to instruct the jury that their finding of guilt in the first phase of the trial did not foreclose consideration of evidence, which they believed tended to reduce the moral blameworthiness of the defendant. (Appellant's Br. 94-96). This Court has previously decided the issue adversely to Appellant. E.g., *Russeau v. State*, 291 S.W.3d at 436.

For purposes of deliberating the special issues on deliberateness and future dangerousness, the trial court's instructions were sufficient to convey to the jury that a finding of guilt in the first phase of the trial did not foreclose consideration of evidence which tended to reduce the moral blameworthiness of Appellant. The jury was instructed that in deliberating the special issues, "You must consider all the evidence of the guilt or innocence stage and the punishment stage, including but not limited to evidence of the Defendant's background and character or circumstance of the offense that militates for or mitigates against the imposition of the death penalty." (2 CR 330-31, 331). In addition, the jury was instructed, "In answering Special Issue Number Three you shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness." (2 CR 332).

Prior to trial, Appellant filed a "Motion to Hold Unconstitutional Tex. Code Crim. Proc. Art. 37.0711, Sec. 3(E) And (F) – Failure to Require Mitigation Be Considered," which was denied. (1 CR 14-16; 2 CR 256). The motion appears to include the arguments currently made by Appellant.[8] Because Appellant raised the claim below, he must now show error and "some harm." *Almanza v. State*, 686

---

[8] Appellant incorrectly states that this issue was preserved in his "written motion to declare article 37.0711 (3)(f)(4) unconstitutional pretrial (2 CR 21)." (Appellant's Br. 95 n.12). Page 21 is located in Volume 1 of the Clerk's Record. Neither the motion at page 21 nor the actual motion regarding article 37.0711, § 3(f)(4), raise the claim currently made by Appellant. (*Compare* Appellant's Br. 96-98 *with* 1 CR 21-23, 57-62).

-46-

S.W.2d at 171.

That showing is not met where, as here, the trial court properly instructed jurors to consider all of the evidence from both stages of trial in determining the answers to the special issues at punishment. (2 CR 330-31, 331). Jurors are presumed to follow the trial court's instructions in the manner presented. *Colburn v. State*, 966 S.W. 2d 511, 520 (Tex Crim. App. 1998) (citing *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996)). The presumption is rebuttable, but Appellant has pointed to no evidence in rebuttal. Thus, while the trial court did not provide the type of instruction urged by Appellant, he cannot show he was harmed by the omission.

Additionally, no constitutional error is shown where the legal claim has already been decided adversely to Appellant. *Russeau v. State*, 291 S.W.3d at 436; *see Escamilla v. State*, 143 S.W.3d at 828-29 (rejecting claim that Texas death-penalty law is unconstitutional because it does not "mandate consideration of mitigating evidence") (citing *McFarland v. State*, 928 S.W.2d 482, 497-98 (Tex. Crim. App. 1996) ("There is no per se evidence that a juror must view as having definitive mitigating effect.")). The Court should overrule this point of error.

## STATE'S REPLY TO POINT OF ERROR 14
## (NO PRESUMPTION IN FAVOR OF DEATH AND
## NO REQUIREMENT TO CONSIDER MITIGATION INDEPENDENTLY)

Appellant contends the trial court violated the Eighth Amendment by failing to instruct the jury that there is no presumption in favor of death, even if they found him to be a "future danger" in answer to Special Issue Number Two, and that Special Issue Number Three, regarding mitigating circumstances, is to be taken up and considered independently, without regard to the jury's finding on the future dangerousness issue. (Appellant's Br. 92-98). Appellant did not request that the trial court instruct the jury in the manner urged on appeal. Even if Appellant had made the request, it would have been to no avail. This Court has rejected claims identical to Appellant's and, therefore, should overrule Appellant's fourteenth point of error.

The trial court was not required, for purposes of the Eighth Amendment prohibition of cruel and unusual punishment, to instruct the jury in the manner now urged by Appellant. The jury was instead properly instructed that in deliberating the special issues, "You must consider all the evidence of the guilt or innocence stage and the punishment stage, including but not limited to evidence of the Defendant's background and character or circumstance of the offense that militates for or mitigates against the imposition of the death penalty." (2 CR 330-331, 331). The jury was additionally instructed, in accordance with Tex. Code Crim. Proc. art. 37.0711,

§ 3(e), that if it answered the special sentencing issues on deliberateness and future dangerousness in the affirmative, "then and only then" would the jury answer Special Issue Number Three on mitigation. (2 CR 332).

There was no request by Appellant for the trial court to instruct the jury in the manner now urged on appeal.[9] Nor did Appellant object to the punishment charge. (47 RR 130-31). Because the jury-charge claim was not raised at trial, Appellant's sentence may only be reversed if he establishes fundamental error and egregious harm. *Almanza v. State*, 686 S.W.2d at 171. He cannot make this showing.

This Court has held that "[n]othing in our law required the trial court to further instruct the jury that there was 'no presumption in favor of death.' *Russeau v. State*, 291 S.W.3d at 436 (rejecting claim based on instructions given under Tex. Code Crim. Proc. art. 37.071, § 2(d)(1)); *Gamboa v. State*, 296 S.W.3d at 585-86 & n.36 (no error in failing to instruct jury there is no presumption in favor of death) (citing *Saldano v. State*, 232 S.W.3d 77, 105 (Tex. Crim. App. 2007)).

---

[9] Appellant states that this issue was raised "by written objection to the statute, to declare it unconstitutional due to the lack of this charge, which was filed before trial (2 CR 14) and denied by the court (14 RR 72-73)." (Appellant's Br. 97 n.13). Page 14 is located in Volume 1 of the Clerk's Record and is a motion regarding the "Failure to Require Mitigation be Considered." (1 CR 14). The motion does not include the requested jury instructions made the basis of Appellant's claim on appeal. (*Compare id. with* Appellant's Br. 96-98).

The Court has additionally rejected the claim that a jury should be instructed to consider the mitigation issue independently and without regard to the future dangerousness issue. *Russeau v. State*, 291 S.W.3d at 436; *see Martinez v. State*, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996) (rejecting claim that trial court violated the Due Process Clause by refusing to grant request to submit the mitigation special issue to the jury only in the event the jury answered the special issue on future dangerousness in the affirmative). Appellant provides no reason for the Court to reconsider its prior precedent. The Court should therefore deny Appellant's claims and overrule his fourteenth point of error.

## STATE'S REPLY TO POINT OF ERROR 15
## (NO VEHICLE FOR JURY TO RETURN A VERDICT
## OF LIFE IMPRISONMENT)

In his fifteenth point of error, Appellant complains that the trial court failed to instruct the jury that it could return a verdict of life imprisonment even if the jurors conclude that their honest answers to the special issues would require the trial judge to sentence Appellant to death. (Appellant's Br. 98-100). Appellant failed to raise this specific claim to the trial court and did not object to the punishment charge. (47 RR 130-131).[10] Because error was not preserved, Tex. R. App. P. 33.1(a)(1)(A),

---

[10]     Appellant states that this issue "was raised by a written objection to the statute due to the court's charge in this regard, which was filed before trial (2 CR 129) and denied by the court (14 RR 71-72)." (Appellant's Br. 98 n. 14). Page 129 of the Clerk's Record is

-50-

Appellant must show fundamental error and egregious harm. *Almanza v. State*, 686 S.W.2d at 171. On the record in this case, that showing cannot be met.

The trial court properly instructed the jury that it was required to answer the special sentencing issues based on an honest evaluation of the mitigating and aggravating nature of the evidence rather than on public sentiment, public feeling, or on a discretionary act of mercy. Specifically, the jury was instructed that in answering the special sentencing issues, it was "not to be swayed by mere sentiment, conjecture, passion, sympathy, prejudice, public opinion, or public feeling in considering all of the evidence[.]" (2 CR 331, 332). The jury was provided a vehicle—the mitigation special issue—by which an affirmative answer would result in a life sentence being imposed rather than a death sentence. (2 CR 338).

Appellant contends that jurors should have unfettered sentencing discretion to impose a life sentence even though the law and the facts, as viewed by each and every juror, would require a sentence of death. He argues that the Eighth Amendment requires the trial court to empower the jury with a vehicle "capable of giving effect

---

located in Volume 1 and is the signature page of the defense's "Motion for Production of Impeachment Evidence." (1 CR 126-129). Neither motion that was denied by the trial court during the pre-trial hearing concerns Appellant's instant claim. (14 RR 71-72). While Appellant did file various motions challenging the constitutionality of Texas's capital sentencing statute, no motion appears to include the claim currently raised by Appellant regarding the jury's entitlement to a vehicle by which to return a life verdict. (*See* 1 CR 14-16, 17-23, 21-23, 26-31, 32-56, 57-62, 63-86, 135-138, 139-146).

to the evidence." (Appellant's Br. 100) (citing *Smith v. Texas*, 543 U.S. 37, 45 (2004)).[11] However, he cites no precedent for his proposition. In rejecting an Eighth Amendment claim identical to Appellant's, the Court noted that the Supreme Court "has held that such unbridled discretion is not required by the constitution." *Mays v. State*, 318 S.W.3d 368, 397 & n.120 (Tex. Crim. App. 2010) (citing *Johnson v. Texas*, 509 U.S. 350, 362-63 (1993)). Appellant also fails to show harm because, just like Mays, he never demonstrates that any theory of obtaining a life sentence falls outside the scope of the statutorily-mandated special issues. *Id.*

The Court has repeatedly rejected Eighth Amendment claims like Appellant's, and there is no reason for the Court to reconsider its established precedent. *Mays v State*, 318 S.W.3d at 397; *Russeau v. State*, 291 S.W.3d at 436 ("The trial court's instructions meet the requirements of Article 37.071, which, in turn, met the requirements of the Eighth Amendment."); *see Saldano v. State*, 232 S.W.3d at 107-08 (rejecting claim that punishment charge "fails to provide a rational process to permit a discretionary grant of mercy based on mitigating circumstances"). The Court should therefore overrule Appellant's fifteenth point of error.

---

[11] The Supreme Court's decision in *Smith* addressed the constitutionality of a non-statutory, "nullification" special issue that effectively instructed the jury to change one of its "yes" answers to one of the statutory special issues to a "no" answer if the jury believed that mitigating circumstances existed warranting a sentence less than death. *See Smith*, 543 U.S. at 38-39, 45-49. No such instruction was provided in Appellant's case.

A Hays County grand jury indicted Appellant for capital murder, a capital felony for which the punishment is either death or imprisonment for life. Tex. Penal Code § 12.31(a); *id.*, § 19.03(a), (b). The fact that the State was intending to seek the death penalty was not alleged in the indictment, but the State did file a "State's Notice of Intent to Seek the Death Penalty" on March 25, 2011. (1 CR 4, 12). The statutorily-mandated special sentencing issues on deliberateness, future dangerousness, and mitigation were also not alleged in the indictment. Appellant moved to quash the indictment, alleging that it was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), for failing to allege statutory facts required to impose a death sentence. (1 CR 26-30). The trial court denied the motion. (2 CR 260).

Appellant now raises five claims based on *Apprendi* and its progeny. (Appellant's Br. 100-10). The majority of Appellant's complaints were never presented to the trial court, including his claim based on Texas Constitutional law, his claim challenging the lack of grand jury involvement in the State's decision to seek the death penalty, and his claim that the State has the burden of proving a negative answer to the mitigation issue. (Appellant's Br. 103-09).[12] For those claims,

---

[12]     Appellant filed a "Motion to Quash Indictment On Grounds That Tex. Code Crim. Proc. Art. 31.0711(3) Is Unconstitutional." (1 CR 26-30). Paragraph 16 alleged: "The

Appellant has waived any purported error. *See* Tex. R. App. P. 33.1(a). Yet even if the claims had been preserved for appellate review, Appellant acknowledges there is "adverse authority from this Court" rejecting his arguments. (Appellant's Br. 110) (citing, e.g., *Woods v. State*, 152 S.W.3d 105, 121 (Tex. Crim. App. 2004); *Rayford v. State*, 125 S.W.3d 521, 533 (Tex. Crim. App. 2003)). The Court should therefore overrule Appellant's sixteenth point of error.

Appellant cannot show that the trial court erred in its ruling because this Court has repeatedly rejected claims of constitutional error arising under *Apprendi*. For example, in Point of Error 16(a), Appellant alleges that the indictment was fundamentally defective because it did not contain a grand jury charge on the sentencing phase special issues. (Appellant's Br. 101-03). Although everything necessary to be proven in the guilt-innocence phase of trial must be alleged in the indictment, the same requirement does not apply to the special sentencing issues. This Court has held on numerous occasions that *Apprendi* does not require the State to allege the special issues in the indictment. *Russeau v. State*, 171 S.W. 3d at 885-86; *Rayford v. State*, 125 S.W.3d at 533; *Castillo v. State*, 739 S.W.2d 280, 299 (Tex.

---

statute does not require the indictment to allege the special issues, *i.e.*, the 'facts' relied upon to enhance the capital sentence from life to death, contrary to the U. S. Supreme Court's holding in *Apprendi*[.]" (1 CR 30). He also referenced *Apprendi* in a "Motion to Preclude the Death Penalty as a Sentencing Option," which was denied. (1 CR 144-45; 2 CR 263). These appear to be the only arguments made by Appellant regarding *Apprendi*.

Crim. App. 1987); *Sharp v. State*, 707 S.W.2d 611, 624-25 (Tex. Crim. App. 1986).

In Point of Error 16(b), Appellant argues that his rights under the Texas Constitution were violated because he was denied due course of law and the consequent notice and opportunity to prepare as a result of the State's failure to plead the special issues and supporting facts in the indictment. (Appellant's Br. 103) (citing Tex. Const. art. I, §§ 3, 10 & 19). The Texas constitutional provisions cited concern a citizen's right to notice of charges against him and that a person shall not be held to answer for a criminal offense unless indicted by a grand jury. Those provisions do not govern Appellant's specific claim. Appellant cites no constitutional or statutory provision requiring that the punishment-phase special issues be pled in the indictment or that the State must include all the facts supporting its decision seeking the death penalty.[13] While Appellant maintains that he had no notice, the special issues are *statutorily-mandated.* Appellant was given sufficient notice of their potential applicability when he was charged with capital murder in the indictment. (1 CR 4). Appellant was also given specific notice outside the indictment through a filed

---

[13] Appellant's assertion that all facts supporting the decision seeking the death penalty must necessarily be included in the indictment is both factually and legally to no avail. When the State indicts a defendant for capital murder, that does not automatically mean that a death sentence will be sought. And there is certainly no requirement for the State to concurrently file notice of its intent to seek the death penalty at the same time a defendant is indicted. Indeed, as in this case, Appellant was indicted on November 19, 2010, and the State filed notice of its intent on March 25, 2011. (1 CR 4, 12).

pleading served on him that established the State intended to seek a death sentence. (1 CR 12). Because the indictment does not violate any Texas Constitutional safeguard, the Court should deny Appellant's claim.

In Point of Error 16(c), Appellant cites *Apprendi* for his proposition that the Texas capital sentencing scheme is unconstitutional by failing to assign a burden of proof to the State to disprove mitigating evidence. (Appellant's Br. 104-07). "This Court has consistently held that, under Texas statute, the State does not bear the burden of proof on the mitigation special issue and that the statute setting out the issue and the instructions is constitutional." *Mays v. State*, 318 S.W.3d 368, 397 (Tex. Crim. App. 2010) (citing *Whitaker v. State*, 286 S.W.3d 355, 370 (Tex. Crim. App. 2009); *Busby v. State*, 253 S.W.3d at 667); *Roberts v. State*, 220 S.W.3d 521, 534-35 (Tex. Crim. App. 2007) (rejecting claim that the *Apprendi* line of cases requires a burden of proof with the mitigation special issue) (citing *Perry v. State*, 158 S.W.3d at 446-48).

In Point of Error 16(d), Appellant argues that the trial court should have quashed the indictment on the ground that there was no grand jury involvement in the decision to pursue the death penalty against him. (Appellant's Br. 107-09). Again, this Court has rejected the identical argument. *Leza v. State*, 351 S.W.3d at 354 (citing *Roberts v. State*, 220 S.W.3d at 535 & n.1).

Finally, in Point of Error 6(e), Appellant argues that he was denied his Sixth Amendment right to trial by jury because the indictment did not allege the special issues and the supporting facts necessary to impose a death sentence. (Appellant's Br. 109). It is unclear how Appellant believes he was denied a right to trial by jury. In *Apprendi*, the Supreme Court held that "[t]he Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." 530 U.S. at 467. Appellant does not contend that the State failed to allege every element of the capital offense. Nor does he contend that a special issue was not submitted to the jury or was not answered by the jury at punishment. While the Court has addressed Sixth Amendment claims under *Apprendi*, they have generally involved whether a trial court's decision to cumulate sentences violated *Apprendi*,[14] and that situation does not exist here. Appellant's allegations presents no viable Sixth Amendment claim.

Considered together, Appellant's arguments fail to show that the trial court erred in denying his motion to quash the indictment. The Court should affirm the trial court's ruling and reject Appellant's sixteenth point of error in its entirety.

---

[14]    *Alameda v. State*, 235 S.W.3d 218, 223-24 (Tex. Crim. App. 2007) (citing *Barrow v. State*, 207 S.W.3d 377, 379-80 (Tex. Crim. App. 2006)).

## STATE'S REPLY TO POINT OF ERROR 17
## (FAILURE TO PRECLUDE THE DEATH PENALTY - *BUSH v. GORE*)

As his seventeenth point of error, Appellant contends the trial court erred in denying his motion to preclude the death penalty as a sentencing option due to Equal Protection violations. (Appellant's Br. 111-120).[15] Citing the Supreme Court's decision in *Bush v. Gore*, 531 U.S. 98, 102 (2000), he argues that Texas's death penalty system is unconstitutional because there are "no uniform, statewide standards" to guide Texas prosecutors in deciding when they should seek the death penalty. (Appellant's Br. 111). The trial court did not err in denying Appellant's motion because this Court has repeatedly rejected Appellant's very claim. *See*, e.g., *Threadgill v. State*, 146 S.W.3d at 672.

"It is well-settled that the discretion afforded the State to seek the death penalty is not unconstitutional." *Cantu v. State*, 842 S.W.2d at 692 (citing *Gregg v. Georgia*, 428 U.S. 153, 199 (1976) (holding that prosecutorial discretion was not unconstitutional); *see also Jurek v. Texas*, 428 U.S. 262, 274 (1976) (holding that prosecutorial discretion was not unconstitutional). This Court has "previously rejected the notion that there should be 'a statewide policy or standard for determining in which cases the State will seek the death penalty as opposed to leaving

---

[15]     Prior to trial, Appellant filed a "Motion to Preclude the Death Penalty as a Sentencing Option," which was denied. (1 CR 63-86, 139-46; 2 CR 263).

the decision in the hands of individual district attorneys.'" *Roberts v. State*, 220 S.W.3d at 535 (citing *Crutsinger v. State*, 206 S.W.3d 607, 611-13 (Tex. Crim. App. 2006); *Hankins v. State*, 132 S.W.3d 380, 387 (Tex. Crim. App. 2004)).

The Court has also specifically rejected claims, like Appellant's, that a disparity in death-penalty decision-making from county to county violates the principles articulated by the Supreme Court in its *Bush v. Gore* decision. *E.g., Neal v. State*, 256 S.W.3d 264, 272 (Tex. Crim. App. 2008); *Roberts*, 220 S.W.3d at 535; *Threadgill*, 146 S.W.3d at 672; *Rayford v. State*, 125 S.W.3d at 534. Appellant offers no basis for this Court to revisit the issue. Accordingly, the Court should affirm the trial court's ruling and overrule Appellant's seventeenth point of error.

### STATE'S REPLY TO POINT OF ERROR 18
### (INSTRUCTIONS FAILED TO PROVIDE AN OPPORTUNITY
### FOR A "REASONED MORAL RESPONSE")

Appellant maintains that the trial court's instructions at punishment violated his Eighth Amendment rights by "fail[ing] to provide the jury the opportunity to have its decision reflect a 'reasoned moral response' to the offender and his offense." (Appellant's Br. 120). In Point of Error 18(a), he contends that the trial court's instructions "conveyed the false impression that mitigation is necessarily tied into the finding on future dangerousness" and that jurors might believe that because the future dangerousness issue must be proven beyond a reasonable doubt, then they might

erroneously believe that evidence in mitigation must somehow outweigh that finding. (Appellant's Br. 121).[16] In Point of Error 18(b), Appellant argues that the trial court's instructions for the jury to consider all evidence that militates for or against the death penalty directed jurors away from a "'reasoned moral response' to the offender and his offense" and allowed improper consideration of evidence that militated in favor of death. (Appellant's Br. 122).

Neither issue appears to have been raised to the trial court. While Appellant states that he raised these issues "in a written motion pretrial" that was denied by the trial court (Appellant's Br. 120 n. 19) (citing 2 CR 57; 14 RR 57), there is no reference to Appellant's current arguments in the pages cited. The Court should reject Appellant's claims at the outset for his failing to provide appropriate citations to the record. *See* Trap. R. App. P. 38.1(i).

If the Court does reach the issues, it should deny relief. Because Appellant's arguments do not appear to have been made to the trial court, he must show fundamental error and egregious harm. *Almanza v. State*, 686 S.W.2d at 171. He cannot make that showing,

---

[16] Appellant also asserts that the instructions "did not allow the jury to give effect to the mitigation evidence presented." (Appellant's Br. 121). However, he fails to identify any mitigating evidence that purportedly falls outside the scope of the existing special issues, so the Court should reject the claim.

The trial court's instructions do not reveal error, statutorily or otherwise. The jury was properly instructed that in deliberating the special issues, jurors "must consider all the evidence of the guilt or innocence stage and the punishment stage, including but not limited to evidence of the Defendant's background and character or circumstances of the offense that militates for or mitigates against the imposition of the death penalty." (2 CR 330-31, 331). The jury was also instructed that the State has the burden of proving beyond a reasonable doubt that the answer should be "Yes" to the deliberateness and future dangerousness special issues. (2 CR 330, 331). In turn, the jury's answers to the first two special issues stated, "We, the jury, unanimously find and determine beyond a reasonable doubt" that the answer to each issue is "Yes." (2 CR 336, 337). No "beyond a reasonable doubt" language is included in the trial court's instructions regarding the mitigation special issue or in the actual special issue itself. (2 CR 331-32, 338).

Appellant's supposition that jurors might have held an erroneous belief regarding a standard of proof on the mitigation special issue is no basis for a claim of constitutional error. (Appellant's Br. 121). He starts with the faulty presumption that jurors misread, misconstrued, and misinterpreted the trial court's instructions. He does so despite the clarity of the instructions set forth above and the voir dire of each juror about the special issues. Appellant's conjecture does not rebut the principle that

-61-

jurors are presumed—in the absence of any contrary evidence—to have understood the instructions in their intended meaning, to have followed the instructions given, and to have acted rationally in discharging their duties. *Hutch v. State*, 922 S.W.2d at 172; *Richardson v. State*, 879 S.W.2d at 882.

Appellant's Point of Error 18(b) fairs no better. (Appellant's Br. 122-23). The crux of the claim is that the trial court erroneously instructed the jury to consider all the evidence during its punishment-phase deliberations which, in turn, paved the way for "improper consideration of other evidence that militated in favor of death." (Appellant's Br. 122). Apellant contends that the improper evidence in his case is "graphic accounts by other inmates of offenses committed by others," whatever that might be. (*Id.*). This generalized description with no citation to the record makes it impossible to verify Appellant's claim. In any event, Appellant's arguments are largely a repeat of his Point of Error 12 regarding the trial court's failure to limit the scope of militating evidence to that which might be viewed as reducing moral blameworthiness. (*Compare id.* at 92-94). As argued in the State's Reply to Point of Error 12 and incorporated herein, the trial court did not err in providing the challenged instruction because jurors are statutorily required to consider all the evidence during deliberations. The Court should overrule Appellant's eighteenth point of error in its entirety.

## STATE'S REPLY TO POINT OF ERROR 19
## (INSTRUCTIONS FAILED TO PROVIDE JURORS A "REASONED
## AND RATIONAL MORAL PROCESS")

As his final point of error, Appellant asserts that the trial court violated his Eighth and Fourteenth Amendment rights when it failed to instruct the jury so as to provide "a reasoned and rational moral process for the consideration and implementation of mitigating circumstances." (Appellant's Br. 123). He argues that the jury instructions failed to provide a constitutionally satisfactory process for considering and giving effect to mitigating evidence. Although he contends the instructions have a "lack of definition" and "structure," and are "vague and inherently flawed," his briefing fails to provide any specific reason or facts in support, nor does it identify any mitigating evidence that jurors were not able to consider in this case. (*See* Appellant's Br. 123-24). Because Appellant does not appear to identify any new complaint that has not already been raised and addressed by the State in its reply to Appellant's Points of Error 6 to 18, the Court should reject his claim and overrule this final of error.

## PRAYER

The State respectfully requests that this Honorable Court overrule Appellant's points of error and affirm his conviction and sentence of death.

Respectfully submitted,

WES MAU
Hays County District Attorney
SBOT 00784539
712 S. Stagecoach Trail, Ste. 2057
San Marcos, Texas 78666
(512) 393-7600
(512) 393-7619 fax
wes.mau@hays.co.tx.us


  /s/ Katherine D. Hayes
KATHERINE D. HAYES
Assistant Attorney General
*Lead Counsel*
SBOT 00796729
Texas Office of the Attorney General
Criminal Appeals Division
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1400
(512) 320-8132 fax
katherine.hayes@texasattorneygeneral.gov

## CERTIFICATE OF SERVICE

I certify that on February 9, 2015, a copy of the foregoing Brief of Appellee was filed electronically with the Court through the eFileTexas.gov electronic filing system. Electronic service was complete on that same date on transmission of the document to the serving party's electronic filing service provider, and notice of filing was automatically generated and served on the following counsel for Appellant:

Angela J. Moore
310 S. St. Mary's, Ste. 1830
San Antonio, TX 78205
amoorelaw@aol.com

Kerri Anderson Donica
301 West 3rd Ave.
Corsicana, TX 75110-4665
kerri@kerridonicalaw.com

I further certify that on the same date, a copy of this Brief of Appellee was served on the following counsel for the State by email and by U.S.P.S. delivery:

Wes Mau
Hays County District Attorney
712 S. Stagecoach Trail, Ste. 2057
San Marcos, TX 78666
wes.mau@co.hays.tx.us

/s/ Katherine D. Hayes
KATHERINE D. HAYES
Assistant Attorney General

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief of Appellee complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared using Corel WordPerfect Office 12, Times New Roman font with 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i)(2)(A) because it contains 15,589 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Katherine D. Hayes
KATHERINE D. HAYES
Assistant Attorney General